UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ERIC C. HEFNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:10-CV-169 |
| v. | ) | Chief Judge Curtis L. Collier |
| | ) | |
| MCMINN COUNTY, TENNESSEE, | ) | |
| and SHERIFF STEVE FRISBIE, in his | ) | |
| individual and official capacity as the | ) | |
| Sheriff of McMinn County, Tennessee, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Before the Court is Defendants' McMinn County, Tennessee and Sheriff Steve Frisbie

(collectively, "Defendants") motion for summary judgment (Court File No. 10). Plaintiff submitted

a response to Defendants' motion for summary judgment (Court File No. 15), and Defendants

submitted a reply brief (Court File No. 20).[1] For the following reasons, the Court will **GRANT IN**

**PART** Defendants' motion for summary judgment (Court File No. 10) and **DISMISS** Plaintiff's 42

U.S.C. § 1983 claim against Defendant Frisbie in his official capacity. All other claims brought by

Plaintiff will proceed to trial.

I.      **BACKGROUND INFORMATION**

---

[1] Plaintiff filed a motion for extension of time to submit his response to Defendants' motion
for summary judgment (Court File No. 13). Defendants subsequently submitted two motions for
extension of time to file their reply brief (Court File Nos. 18, 19). Neither party objected to the
requests for additional time. Accordingly, the Court will **GRANT** Plaintiff's motion for extension
of time (Court File No. 13) and Defendants' two motions for extension of time (Court File Nos. 18,
19). Plaintiff's response brief, Defendants' reply brief, and all supporting documents will be deemed
part of the record.

**A.      Relevant Facts**

On June 23, 2009, Plaintiff was arrested and charged with possession of Schedule VI drugs for resale, possession of a firearm in commission of a felony, and possession of legend drugs without a prescription (Court File No. 12-4 ("Inmate Record"), at pp. 2-3). Plaintiff was booked into the McMinn County Detention Facility that evening. Plaintiff's personal property receipt states Defendant arrived with a medic alert necklace identifying Plaintiff as a diabetic as well as a diabetic test kit (Hefner Dep. pp. 16, 26; Inmate Record p. 13). Further, Plaintiff asserts his diabetic medication was in his vehicle, which was searched at the time of his arrest (Hefner Dep. pp. 16, 21-22). Although Plaintiff presumably believed his medication was taken to the jail (Hefner Dep. pp. 28, 32, 39), Defendants assert they did not receive Plaintiff's medication and note that no medications were listed on Plaintiff's personal property receipt (Inmate Record p. 13).

As part of the intake process, Plaintiff participated in a medical screening (Inmate Record pp. 4-5; Court File Nos. 12-1, 16-2 ("Hefner Dep."), p. 28).[2] During the screening, Plaintiff informed an officer or nurse that he had Type Two Diabetes and provided the names of his medications (*id.*). Plaintiff also signed a form acknowledging the following:

> It is my understanding that if I am sick while I am incarcerated in this facility, I should tell the on-duty officer who will give me a medical request form on which I can write my problem. This form will be referred to the nurse on duty.

(Inmate Record p. 5). Plaintiff alleges that, while being screened, he told an officer that he needed to test his sugar (Hefner Dep. p. 28). According to Plaintiff, his request was ignored (*id.*).

While in custody, Plaintiff avers he made a request to test his blood sugar and to take his

---

[2] Both Plaintiff and Defendants submitted selected portions of Plaintiff's deposition. To minimize confusion, the Court will treat these submissions as one document and cite to it accordingly.

medicine every time jail personnel passed by, which he states was approximately every three to four hours (*id.* at 28, 36, 41). Plaintiff claims his requests were ignored each time. Further, Plaintiff asserts he was never presented with a form to complete when he made his requests for medical assistance (*id.* at 39).

Plaintiff cannot recall the names of any of the officers or jail personnel that he encountered (*id.* at 38). Moreover, he admits he had no contact with Sheriff Steve Frisbie during his time in jail (*id.* at 38-39). Although Plaintiff states he could not remember exactly how long he was at the McMinn County Detention Facility, intake records show Plaintiff was booked the evening of June 23, 2009, and made bond and was released on June 24, 2009 (Hefner Dep. pp. 32-34, Inmate Record pp. 6-8).

Post-release, Plaintiff was treated by Dr. David Huffman of University Diabetes and Endocrine Consultants (Court File No. 16-1 ("Huffman Dep."), p. 6). Although Plaintiff cannot remember the exact time period, he claims Dr. Huffman has been treating his diabetes for approximately four or five years (Hefner Dep. p. 14). Huffman testified that he saw Plaintiff on June 26, 2009, and diagnosed Plaintiff as having "stress-related deterioration and glucose control, possibly accompanied by an interruption of his medication" (Huffman Dep. p. 6). Huffman also opined that a causal relationship might exist, "at least in part," between Plaintiff's complications and the interruption of his medical therapy (Huffman Dep. pp. 11-12).

Defendants have a contract with Doctors Hospital of McMinn County, LLC for the provision of medical services to its inmates (Court File No. 12-8). As part of the contract, the jail's medical coverage allows for a full-time nurse, a part-time nurse, and a doctor who sees patients at least once a week (*id.*). The Inmate Handbook provides the following guidance as it pertains to medical care

3

for inmates:

9.1 Shortly after admission to McMinn County Detention Facility you will receive a health history screening and exam by the detention facility nurse. This is performed to identify any conditions requiring treatment and to detect the presence of any communicable diseases.

Pre-existing, non life-threatening conditions will be treated at inmate's expense. If you are on any medications that need to be dispensed daily, they will need to be brought to the facility for verification. . . .

The McMinn County Detention Facility is **only** responsible for providing **emergency** medical care. McMinn County does **not** provide medical care to correct pre-existing medical problems or conditions caused by life long neglect of your physical condition. Only emergency, life threatening medical conditions will be treated.

. . .

9.2 All population inmates on medication will receive their medicine at times designated by the medication runs.

9.7 Sick call is held in clinic area two to three days weekly, excluding weekends and holidays. Inmates should sign up for sick call at breakfast, fill out a sick call sheet and turn it [in to] the unit officer before 9:00 AM. These will be picked up by medical personnel.

9.8 All inmates signing up for sick call must provide their name and the nature of the complaint on the form provided. . . .

. . .

9.10 **Anyone having an emergency medical problem before or after sick call should report this to the unit officer.** Arrangements will be made by the officer and medical staff for evaluation and treatment.

(Court File No. 12-7, pp. 12-15). Defendants also maintain a policy and procedure manual for the

McMinn County Detention Facility detailing other rules that must be adhered to by jail personnel

(*See* Court File No. 12-6).

**B.      Procedural History**

On June 23, 2010, Plaintiff brought suit against Defendants in this Court pursuant to 42

4

U.S.C. § 1983 (Court File No. 1). Plaintiff alleges Defendant McMinn County, Tennessee and Defendant Frisbie violated his Fourteenth Amendment right to receive adequate medical care as a pretrial detainee. Plaintiff's claims include a cause of action against Defendant Frisbie in his individual and official capacity, and he alleges Defendant Frisbie was deliberately indifferent to Plaintiff's medical condition and "implicitly authorized, approved, and knowingly acquiesced in the [alleged] [un]constitutional conduct" (Court File No. 1, ¶¶ 11, 12). Plaintiff further alleges municipal liability against Defendant McMinn County on the grounds that "(1) the policies and/or customs of McMinn County, Tennessee was the moving force behind the violation of Plaintiff's federal constitutional rights, (2) Defendant Frisb[ie] is the final policy maker of McMinn County, Tennessee relative to medical care and treatment in the McMinn County Jail, (3) Defendant McMinn County, Tennessee was deliberately indifferent to the training of jail staff relative to the medical care and treatment of inmates, and (4) Defendant McMinn County, Tennessee ratified the actions of the jail staff regarding the lack of medical care and treatment of Plaintiff . . . ." (*id.* ¶ 12). Plaintiff seeks compensatory damages, punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other relief granted by the Court.

Defendants have now moved for summary judgment in this matter (Court File No. 10).

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    42 U.S.C. § 1983

Plaintiff brings suit against Defendants pursuant to 42 U.S.C. § 1983. To survive a motion for summary judgment for a § 1983 claim, the plaintiff must reveal a genuine issue of material fact

6

exists showing "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995) (internal quotations omitted). In a suit against a municipality, the issue, similarly, is whether the plaintiff has been deprived of a constitutional right and whether the municipality is responsible for the violation. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004).

The Court will consider each of Plaintiff's claims against Defendant Frisbie and Defendant McMinn County in turn.

### A.    Sheriff Steve Frisbie

Plaintiff brings suit against Defendant Frisbie pursuant to 42 U.S.C. § 1983 in both his official and individual capacity. A suit against an officer in his official capacity is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the claims against Defendant Frisbie in his official capacity will be construed as claims against McMinn County, and Plaintiff's § 1983 action against Defendant Frisbie in his official capacity is **DISMISSED**.

With regard to Plaintiff's § 1983 action against Defendant Frisbie in his individual capacity, Defendant asserts the defense of qualified immunity. Courts typically employ a two-part test to determine whether qualified immunity will apply. First, a court must consider whether, when viewed in the light most favorable to the plaintiff, "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). It must also consider "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of*

7

*Nashville & Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir. 2007) (citation omitted). This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *See Saucier*, 533 U.S. at 201.[3] The plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *See Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Since the failure of either prong is dispositive in favor of the defendant, the Court may address either prong of the test first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

Plaintiff avers Defendant violated his "clearly established federal constitutional rights as a pretrial detainee to adequate medical treatment" (Court File No. 1). The Eighth Amendment prohibits prison officials from the "unnecessary and wanton infliction of pain," which includes "deliberate indifference" to the "serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). The protections provided to post-conviction inmates under the Eighth Amendment also extend to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (citation omitted). A cause of action for denial of medical care has both an objective and subjective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2005). For the objective component, the inmate must show that a "sufficiently serious" medical need existed. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires a showing that the prison official was "deliberate[ly] indifferen[t]"; that is, he had "a sufficiently culpable state of mind," *Brown v.*

---

[3] Recent Sixth Circuit case law provides a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights," *Peete*, 486 F.3d at 219. However, regardless of whether a court applies the two-part or three-part test, "the essential factors considered are [ ] the same." *Everson v. Leis*, 556 F.3d 484, 494 n.4 (6th Cir. 2009).

8

*Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834).

Here, a reasonable factfinder, viewing the facts in the light most favorable to Plaintiff, could find Defendant Frisbie violated Plaintiff's constitutional right to obtain medical care and, therefore, should not receive qualified immunity. Beginning with the objective standard, to show a medical condition is "substantially serious" the plaintiff must demonstrate "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 867 (quoting *Farmer*, 511 U.S. at 834). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *See Blackmore*, 390 F.3d at 897. Alternatively, when a prisoner's medical need is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" *See id.* (emphasis omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) (observing the "objectively serious" requirement was met where a diabetic inmate whose medical condition required regular insulin injections failed to receive such treatment, and he was subsequently admitted to the hospital for emergency treatment and remained for several days); *Taylor v. Boyd*, No. 06-2412-JPM-dkv, 2008 WL 3852184, at *11 (W.D. Tenn. Aug. 15, 2008) (finding deliberate indifference by prison officials who denied an inmate with asthma his inhaler despite repeated requests, and the inmate suffered an asthma attack four days later).

Plaintiff has presented sufficient evidence to establish a genuine issue of material fact as to whether he suffered from a "substantially serious" medical condition. First, during Plaintiff's medical screening at McMinn County Detention Facility, Plaintiff alerted prison officials that he had Type II diabetes and was taking medication for his condition (Inmate Record p. 5, Hefner Dep. p.

9

28). It is commonly known that Type II diabetes must be diagnosed by a licensed physician and generally treated with medication. Here, Plaintiff asserts Dr. David Huffman diagnosed him with Type II diabetes, prescribed medication, and provided treatment for approximately four or five years prior to the incident involving Defendants (Hefner Dep. p. 14). These facts alone would likely be sufficient to establish Plaintiff was suffering from an "objectively serious" medical condition. However, even if Plaintiff's condition was not "obvious," the effect the delay of medical treatment had on Plaintiff might raise a genuine issue of material fact as to the seriousness of Plaintiff's condition. Dr. Huffman states that he treated Plaintiff on June 26, 2009, approximately two days after Plaintiff's release from jail, and diagnosed Plaintiff with having "stress-related deterioration and glucose control, possibly accompanied by an interruption of his medication" (Huffman Dep. p. 6).[4] Although Plaintiff would need to present additional evidence at trial to show, *inter alia*, the extent of the effects of the delay especially in light of the fact that Plaintiff was only denied his medication for approximately one day (that is, the alleged length of Plaintiff's stay in jail), the evidence presented thus far, taken in the light most favorable to Plaintiff, would satisfy the objective component.

For the subjective component, Plaintiff must establish Defendant was deliberately indifferent to his medical condition. The deliberate indifference standard "entails something more than mere negligence;" yet, it is well established "it is satisfied by something less than acts or omissions for

---

[4] Defendants' motion for summary judgment requests that this Court dismiss Plaintiff's lawsuit if his counsel failed to provide an expert opinion on whether Plaintiff had a serious medical need and whether Defendants were deliberately indifferent to Plaintiff's medical needs (Court File No. 10). Plaintiff's doctor, David Huffman, was subsequently deposed, and this evidence was presented along with Plaintiff's response to Defendants' motion for summary judgment. Therefore, the Court finds Defendants' argument for dismissal on this grounds is now moot.

10

the very purpose of causing harm or with knowledge that harm with result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). However, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

It is well established that a defendant's liability under 42 U.S.C. § 1983 cannot be based solely on the doctrine of respondeat superior. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To establish supervisory liability, the Sixth Circuit requires plaintiffs to show a direct causal link between the acts of the subordinate and the supervisory defendant. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). This necessitates that there "be a showing that the supervisor encouraged the specific incident of misconduct or in some way participated in it." *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1996) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id. But see Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.").

Here, viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has raised a triable issue of fact as to Defendant Frisbie's conduct. Plaintiff does not assert

11

Defendant had any direct personal involvement in Plaintiff's medical care at McMinn County Detention Facility (Hefner Dep. p. 38). Rather, Plaintiff claims Defendant Frisbie knowingly implemented a policy that did not provide for the treatment of pre-existing medical conditions, and the implementation of that policy led to the violation of Plantiff's clearly established constitutional right (Court File No. 15). The policy at issue in the Inmate Handbook reads in pertinent part:

> The McMinn County Detention Facility is **only** responsible for providing **emergency** medical care. McMinn County does **not** provide medical care to correct pre-existing medical problems or conditions caused by life long neglect of your physical condition. Only emergency, life threatening medical conditions will be treated.

(Court File No. 12-7, p. 13). Plaintiff argues that this policy resulted in him not receiving treatment for a pre-existing medical condition--Type II diabetes--which led to complications post-release. He explains that, during his medical screening, he told the jail official he needed to "test his sugar" and was ignored (Court File No. 28). Further, while in detention at McMinn County Detention Facility, Plaintiff alleges he made several requests for his medication and diabetic test kit, and was ignored each time (Hefner Dep. p. 28, 36, 41). Finally, despite his many requests, Plaintiff asserts he was never even given a medical request form to fill out regarding his medical concerns. Although Defendants have presented several policies and procedures to demonstrate McMinn County has a constitutional healthcare program, the Court finds it is certainly plausible that the policy regarding pre-existing conditions may have influenced the conduct of prison officials towards Plaintiff, which may have placed Plaintiff at risk of substantial harm.

The issue here, however, is whether Defendant Frisbie implicitly authorized the harm to Plaintiff by implementing a policy that he should have known would create a substantial risk of harm to the class of persons affected by a pre-existing condition. In *Young* ex rel *Estate of Young v. Martin*, the estate of a former prisoner brought a § 1983 action against the director of a state

12

department of corrections alleging the director was aware a health service policy exposed inmates to excessive risks of harm and the director disregarded that risk by implementing the policy. F. App'x 509, 514 (6th Cir. 2002). The director had no direct personal involvement in the plaintiff's care. *Id.* Nonetheless, the Sixth Circuit denied qualified immunity on the grounds that the director " at least implicitly approved" the conduct of his subordinates by setting forth a policy "with only minimal standards of health care for inmates with chronic or long-term serious illnesses knowing that in doing so he was creating a substantial risk of harm to inmates." *Id.* at 515.

Although the facts of the present case are not analogous to *Young* ex rel *Estate of Young*, the Sixth Circuit's analysis of the director's conduct is useful in considering the culpability of Defendant Frisbie. Here, Plaintiff has highlighted language in the Inmate Handbook that appears to grant minimal care to inmates with pre-existing conditions. Such a policy could create an inference that those inmates would be placed at a substantial risk of harm; yet, the policy was still implemented and placed in the Inmate Handbook.

Further, Plaintiff cites to portions of Defendant Frisbie's deposition testimony in a previous trial in which Defendant purportedly acknowledges problems with the policy. In particular, Plaintiff highlights portions of Defendant's testimony where Defendant acknowledges that he wrote the aforementioned paragraph contained in the Inmate Handbook, and at a later point, acknowledges from a policy standpoint, that the department may not treat a person if they came in with diabetes and their condition was not life threatening (Frisbie Dep. pp. 88, 115). Because Plaintiff has not provided the Court with the complete transcript nor details about the factual background and holding of the case, the Court would be amiss to place too much weight on this testimony. Nevertheless, viewed in the light most favorable to Plaintiff, the Court finds Plaintiff has submitted sufficient

13

evidence to create a triable issue of fact as to whether Defendant Frisbie implicitly authorized a policy that violated Plaintiff's constitutional right to medical care as a pretrial detainee. The Court will allow Plaintiff to proceed to trial on the § 1983 claim against Defendant in his individual capacity.

## B.  McMinn County

Plaintiff also brings a § 1983 action against Defendant McMinn County alleging Defendant implemented a policy that was the "moving force" behind the violation of Plaintiff's rights and that Defendant was deliberately indifferent to the training of jail staff as it pertained to the medical care and treatment of inmates (Court File No. 1). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  There must be a direct causal link between the municipality's policy and the alleged constitutional violation. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). Plaintiff has the burden to "show[] that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001). The municipality will only be liable if the decisionmaker possessed final authority to create the policy related to the action at issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

Further, a plaintiff can show that a municipality's failure to train or supervise its employees demonstrates deliberate indifference to the rights of persons with whom officers will have contact, such that it effectively constitutes a government custom or policy. *City of Canton v. Harris*, 489 U.S.

14

378, 388 (1989). However, to do so, the plaintiff must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).

Viewed in the light most favorable to Plaintiff, a reasonable factfinder could conclude Defendant McMinn County is subject to municipal liability. Plaintiff alleges the policy concerning treatment of pre-existing medical conditions is unconstitutional. The policy states, in pertinent part, Defendant will "not provide medical care to correct pre-existing medical problems or conditions caused by lifelong neglect of the physical condition. Only emergency, life threatening medical conditions will be treated" (Court File No. 12-7, p. 13). Although Defendant has submitted several policies and procedures that, taken as a whole, may demonstrate McMinn County has a constitutional healthcare program, Plaintiff has established a genuine issue of material fact as to whether constitutional violations could emerge from such a policy. Further, as previously noted, Plaintiff has presented evidence of Defendant Frisbie admitting authorship of the policy in his position as sheriff (Frisbie Dep. pp. 88, 108). Finally, Plaintiff argues this policy was the "driving force" behind Defendant McMinn County's violation of Plaintiff's constitutional rights (Court File No. 17). Plaintiff presents deposition testimony from his physician, David Huffman, who testified Plaintiff's health problems post-release may have been causally related, at least in part, to an interruption in his medication (Huffman Dep. pp. 10-11). Although admittedly Plaintiff will need to provide more support for his position to prevail on this claim, particularly as it relates to any claim that Defendant has failed to train or supervise its employees so as to amount to "deliberate

15

indifference," an argument for which Plaintiff provides no direct support, Plaintiff has presented

sufficient evidence overall to proceed to trial. Therefore, the Court will **DENY** Defendants' motion

for summary judgment as it pertains to Plaintiff's claim of municipal liability.

## IV.     CONCLUSION

In sum, the Court will **GRANT IN PART** Defendants' motion for summary judgment (Court

File No. 10) and **DISMISS** Plaintiff's 42 U.S.C. § 1983 claim against Defendant Frisbie in his

official capacity. All other claims brought by Plaintiff will proceed to trial.

An Order shall enter.


/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

16